Case number 13-3247 is consolidated with 14-0180 and is charged to the Estate of Howell. All right. Good morning ladies and gentlemen. If we could have counsel who are going to present please approach the podium and identify yourselves. Eric Dworkin of Clark Hills representing the Jordan Trust Company and for purposes of argument the Tynan Turks representing the Council. David Martin of the Guardian of Life. All right. Thank you. The third panel member today is Justice Reyes who is unfortunately unavailable. He's asked me to inform you that, however, he has studied the case and he will listen to today's oral arguments of the recording of that and will participate in the decision. Why don't we have 20 minutes on each side and the two athletes can split that 20 minutes on either side. All right. Let's begin. Thank you, Eric. I'll reserve five minutes for a vote. Very well. May it please the Court, again Eric Dworkin on behalf of the co-Guardian of the Estate. Three things I want to talk about today in summary fashion. The precise language of the relevant statute, 755 ILCS 5-11A-18-5 and that will include subsection 6 of that particular statute. It's in the adult guardianship section of the program. And what I'll do at the outset is look at the precise language of A-5 and A-5-6 and demonstrate that the plain meaning of the words used cannot encompass the limitation placed on the section by the trial court such that those persons with disabilities like Donald, that is developmentally disabled, or persons that never had customary capacity as adults can never do a state plan to deviate from intestacy. That's a rule I will submit to you as a result of the language that doesn't exist within the statute and one that we ought not read in. Second, in making the ruling that it did, the trial court did not hold a hearing as to the items to be reviewed and relied upon by the guardians of the estate in proposing the estate plan that deviated from intestacy. And I will point the court to the items that the judge should have looked at in deciding whether it should have approved the proposed plan, having a rule that it can't if it didn't hold an evidentiary hearing. And finally, I'll turn to the trial court's ruling where it prospectively ruled that no fees would be reasonable for the prosecution of this appeal without first reviewing the submission of any fee statements from counsel following the appeal or even after the result of the appeal. So to begin with, looking at A-5-6, which is the relevant statute that we all agree, including the trial court, authorize the creation of a trust for the benefit of the ward or others that may extend beyond his or her disability or life. That is the extent of A-5-6. Importantly, there's nothing in A-5-6 that says certain disabled persons do not get the benefit of A-5-6. A-5-6 applies for the benefit of the ward, and that is all that it says where ward is understood to be disabled persons, which within the definition section of the Probate Act includes persons that become disabled over time, perhaps through dementia, become disabled because of a catastrophic accident while in adults, or in Donald's case, were disabled at birth. The other thing that A-5-6 does on its face is provide that the trust can be created for the benefit of others, and expressly the term others is not limited with any notion of intestacy. The trial court's ruling was that Donald's estate plan, because he was disabled from birth, had to follow intestacy, and looking at the statute that authorizes... Where did he make the connection between the fact that the child was disabled from birth, or thereabouts, and that, ergo, intestate succession must be the order of the day? I will try to speak... What I think the trial court did is I think the trial court made the mistake in saying that because Donald never had testamentary capacity, he therefore could not have an estate plan that deviated from intestacy. All right. And so, I think it's a good time, if I might, to just talk about that concept and what I think the trial court missed on that. A-5, we'll talk about three types of people. There are people like me, arguably, that are fully abled, and I can do an estate plan, and I don't need any court to consider one way or the other whether I should or shouldn't be able to do one. Then there are folks that are adjudicated disabled. And there's different types of people that are adjudicated disabled. You can imagine someone adjudicated disabled because he or she cannot manage her affairs. That's the standard for adjudication. I can't manage my affairs daily. But on a given day, I have the capacity to understand how to create an estate plan. And those are the types of persons that typically require medication. They take their medication, they're well. They don't take their medication, they're poor. And so, over a long time horizon, they need a guardian for their finances, but at a given date, they can have capacity. Those persons do not need court authority, even though they're under a guardianship, to execute an estate plan because they can still have testamentary capacity. Then there's the third group. And this is where Donald falls. And this is the only time you get to A-5, is where the person lacks testamentary capacity. Because if they lack testamentary capacity, they can't themselves go do the will or trust. So what happens is the guardian of the estate, on behalf of the ward, petitions the court, pursuant to A-5-6, for the authority to execute an estate plan. So in a sense, the guardian of the estate's capacity is substituted in for the ward's based on the factors enumerated in A-5. And I think what the trial court did was it said because Donald never had testamentary capacity, he could never do an estate plan. But testamentary capacity has nothing, in fact, to do with estate plans, as done under A-5. Because you don't get to A-5 if you have testamentary capacity. So the other thing I would think of is built in a, you would say, contradiction in the law. That's basically what you're saying. Yes. Because you have a situation where you could never have the use of Section 6, because Section 6 is for situations like this. But he's saying in situations like this, you can't use Section 6. Correct. And what he's basically creating are two classes of disabled persons. Those that became disabled at majority, and those that became disabled prior to majority. And there is nothing in the statute. There is no language. I don't think there's any language anywhere in A-6, A-5-6, or A-5, or anywhere in A-18, which government started to be safe, which would permit that reading of the statute. The other thing I would say is, looking back more broadly at A-5, it provides that the court may approve the making on behalf of the ward of such agreements as the court determines to be for the ward's best interest. So whether this trust agreement is ultimately executed by the court, or approved by the court, is to be decided by the ward's best interest. And under the Probate Act... Well, where are you getting that language from, though? In 11A-18-a, before you get to A-5. Yeah. It is in the middle of the preamble paragraph. In fact, it says twice, for any other purpose which the court deems to be for the best interest of the ward, and the court may approve the making on behalf of the ward of such agreements as the court determines for the ward's best interest. Importantly, one, it refers to the ward's best interest, and again, it refers to the ward. It does not distinguish between the types of wards whose best interests matter in one way or a different way. Under A-5, at the very beginning of A-5 itself, the probate court, upon petition of a guardian, which is what we have here, other than the guardian of a minor, and the reason you have that would be under a different statute, and after notice to all other persons interested as the court directs, and this is the important language, may authorize the guardian to exercise any and all powers over the estate and business affairs of the ward that the ward could exercise at present and not have a disability. So again, incredibly broad. Anything that the ward could do if not disabled. Estate claim would fit under that. Trust would fit under that. And again, ward is not limited or delimited to those persons that became disabled after reaching majority. So, the trial court also held, or as part of its holding held, that there can be no deviation from intestacy for people like Donald, developmentally disabled or disabled for majority, but that is belied by the fact that A-5 itself contains a number of factors and potential recipients, charities, friends, that would not take under intestacy. There is no rule of intestacy that would allow random charities, or in this case a charity that's associated with a particular ward, to take. Those terms would have to be read out of the statute for people like Donald. And again, there just is no basis in the statute to read out terms to make up a rule as the trial court did. Then, under A-5, it talks about what must be considered and what may be considered. And in each of these instances, there's no limitation on who the ward may be or the type of disability the ward may have. So certainly, the nature and permanence of the ward's disability must be considered. The natural objects of the ward's bounty must be considered. But the court may, not exclusively, but may look at the ward's wishes as best they can be determined. Does the natural objects of the ward's bounty always mean every relative that would take by intestate succession? I think you have to consider every person that could take by intestate succession. And I think, fundamentally, the way the process should work is the guardians of the estate look at the facts as they know them. In this case, these are the people that could take under intestacy. Now, there's a provision that I'll get to in just a moment that empowers the guardian of the estate to exclude people. But then the guardian of the estate looks at the facts. Here is a person that did harm to the ward that would take under intestacy. Would I propose that that person get a share in the estate? The guardian of the estate presents the facts to the trial court as to why you must consider this person. But I'm going to tell you why or present facts to you to support my decision that that person ought not take under this particular estate plan. And so the facts would be presented in an evidentiary hearing. And then the trial court, looking at the facts, can decide what's in the best interest of the ward. So, for example, in this case, if we begin with Donald and his mother Latonya, then we look at his father Donald and, to the best of my knowledge, ten half-siblings as of today. The question for the court under the best interest test is, as proposed by the guardian of the estate, is it objectively reasonable for the guardian of the estate to exclude these persons? And the guardian of the estate would, at a hearing, testify, have people testify, what was the nature of your relationship with Donald? How often did you see Donald? Did you make any effort to see Donald? Did you hurt Donald? Ms. Perks, did any of these people come see Donald? Did any of them show interest in Donald? You put together an evidentiary record related to each person that would fit within that rubric, and then you say, based upon that, is it objectively reasonable that we submitted the following? And the trial court takes the evidence, as all trial courts does, and reaches a decision. But we never got to that part of the analysis with the must-considers and the may-considers, because the trial court ruled, I believe erroneously, that it cannot deviate from intestacy for people like Donald. Was there any testimony at all brought before the court? No, there was no evidentiary hearing, Your Honor. In fact, when Mr. LaRose was speaking, the trial court interrupted and said, this is not an evidentiary hearing. So there was no evidence, no witnesses took the stand at the hearing. While there were briefs where it was discussed as to what might or might not be put in front of the court, there was an insufficient, in fact, absent evidentiary record with relation to any of the factors that I've enumerated here today. One of the arguments that has been put forward by the court and by the athletes is that estate planning is never in the best interest of the disabled person, because the dispositive provisions of the statute, or of the estate plan,  and they have no stake in the distribution. Let me ask you a question about it. You haven't gotten to the statement about the guardian shall not, however, be required to include as a beneficiary or fiduciary a person who he has reason to believe would be excluded. But up above that, the guardian shall also indicate in the petition that any planned disposition is consistent with the intention of the ward insofar as they can be ascertained and if the ward's intentions cannot be ascertained, the ward will be presumed to favor reduction in the incidence of various forms of taxation and the partial distribution of his or her estate as provided in the subsection. What do you think that is referring to as provided in the subsection? What do you think that directs us back to? I think that is 18A5, of which this... The court must consider? Yes. And then in ascertaining, the court may consider, but shall not be limited to. So the court is not limited to taxes, estate or inheritance taxes, providing gifts to charities, relatives, friends. So there's a statement there that the court isn't limited, but may consider these, and then we have the factors the court must consider. So all of those, you believe, are referenced by this paragraph, which would suggest that perhaps there is a need for an evidentiary hearing of some kind. The design of the statute and the breadth of the statute and the breadth of considerations is to provide the trial court with the greatest amount of flexibility in dealing with living human beings whose conditions may get better, conditions may get worse, family members may come in their lives, family members may go out of their lives, so that all of the entirety of the statute is... And this is an important point here. What was proposed was a revocable trust, that there was nothing setting this in stone, that as of today, this is what the co-guardians of the estate, applying all of the myriad of factors here, think are in the best interest of the ward. That may change. And the statute empowers the guardian of the estate to propose those changes and empowers the court to appoint guardians ad litem to investigate those changes, and then ultimately empowers the court to either act on those changes or refuse to act on those changes. But in the end, the guardian's view as to who would be excluded by the ward matters, and I submit to you, it is always under the best interest of the ward, that the guardian, it doesn't say best interest there, but best interest is what matters. And this takes me to the point, what about this concept, or maybe this is what you're getting to, but what about this concept that we see in the Epley briefs that a person has no interest, and therefore no best interest, in the disposition of his assets? And that's exactly what I was making of it. I'll make two points on that. One is the statute confers that right. That is a right expressly conferred by the statute. You can create these things. But then to say that you have no best interest in seeing that it's carried out strikes me as a bit odd. And what it means is, is that anybody can write back. It doesn't necessarily have to be limited to somebody who was developmentally disabled, but if at some point I'm an adult and I have no estate, and there's a catastrophic accident and I collect on a personal injury case, I've never expressed wishes as to how I'd want my estate to go because I never had an estate, I can't do any estate because estate planning is not in my best interest because I don't receive it. What is in your best interest is the orderly disposition of your assets. That's why ordinary people that are not subject to disabilities do estate plans. They don't want to see people in probate court fighting over assets. So to create an orderly disposition of their assets, to maintain harmony among all of them, sometimes to maintain harmony among the various recipients, they do estate plans. So yes, there's a best interest, but most importantly, it's a right conferred by statute. And if it's a right conferred by the statute that says it's in the ward's best interest, I don't see how we can take it away by saying, I don't see the immediate benefit to the ward. The benefit to the ward is living life as close to autonomous as possible. I have the right to do an estate plan. The ward has the right to do an estate plan. Again, the guardianship statute is designed to make people, as much as possible, full people. It's not easy to do. Sometimes you can't do it all the way, and in Donald's case it's very difficult. But we don't want to be in a position of creating second-class citizens where we say, because you are like this, you don't have the rights of everybody else. And that's effectively what's saying that there is no best interest to an estate plan would do. The other argument I wanted to address is this other statute argument. And there are other statutes that allow for the disposition or regulate the disposition of property with that. But that doesn't mean that they supplant the one that expressly was designed for the purpose it was used here. So the children born out of wedlock statute. That applies if there's no will. It's a very blunt instrument. It doesn't address charities. It doesn't address siblings unto themselves. It can address the parent, the eligible parent, but not necessarily the siblings. And it invites litigation, not simplicity, which is what, again, we're hoping to avoid by providing everyone with notice at the time of the estate plan done in the probate court, the guardianship court, that we don't have wholesale litigation under various statutes before the probate, the decedent's court. The other argument that is made is, well, there's other gifting provisions. Well, we have the same problem. If Donald can't express wishes and desires, and I don't concede that he can't, I think verbally he cannot express his wishes, but I think there are many nonverbal forms of communication. But to say that, oh, he could gift stuff to Latina or gift stuff to others, on what basis are we making those distinctions? Why those people and not these? Why this amount and not that? How do we know Donald wants to give a gift at all? Because we apply the same standard, that it's not an exception to the estate planning statute, it's in harmony with it. The guardian of the estate would use the same criteria. Why these people? Well, these are people that are in his life. Why? Maybe some tax benefits this year. Why not these people? And then he would propose that, or she would propose that to the trial court. Again, evidence. And the trial court would decide, based upon the evidence, whether those gifts are feasible under the circumstances. Same factors, same analysis, but that's applied in a trust. Now, turning to the attorney fees, I think it's fair to say there are cases that have some likeness to the instant case, but I think it's fair to say that this is a case of first impression. And the trial court, notwithstanding that it was a case of first impression. For the attorney? For the estate planning. Okay, but not for the attorney. No, but for the attorney's fees, what the trial court said, notwithstanding, you can't get your attorney's fees, I won't even look at your petitions, I won't even assess the reasonableness. We have an estate of approximately $11 million in value. We don't know what the attorney's fees are yet. As with every guardianship action, the lawyers are always on notice that not every fee can get paid. That some fees get cut because the trial court, in looking out for the wards, says, I don't think this was necessary. Or, in light of the size of the estate, I think this is too much, I'm going to cut it to this. But we've never had that hearing in front of the trial court. The trial court simply said, I'm not going to allow you to use the ward's funds to appeal because it's not in his best interest because it's just a dispute among beneficiaries. Now, I submit to you, with all due respect to my colleague, the guardian ad litem, if it's just a dispute among beneficiaries, why is the guardian ad litem here getting paid for by the estate when he's not a beneficiary? In essence, the trial court has, were it not for the fact that Northern Trust is paying for the appeal themselves, independent of later potential submission, there could be no appeal of this case and the trial court's ruling could be insulated from appeal. This is a complicated case, it's a case of first impression, and it ought not be ruled out of hand that the fees are unreasonable. And this court has the power under Illinois Supreme Court Rule 375 that in the event that counsel for a guardian of the estate files something that is privileged or meritless, the sanctioned counsel, and I suggest, would issue such rulings as is necessary to impact the trial court's review of the attorney fee provision if it's ever submitted. So with that, I reserve the remainder of my time. Thank you. Thank you, counsel. May it please the court, I'm David Martin. I'm the court appointed guardian of life for Donald Howley. I was appointed in November of 2011 and have served subsequent to that time. Perhaps I could just address some of the comments that counsel made and try to direct a response to those. Well, Mr. Martin, I want to ask you, did you recommend initially that the court, you were in favor of the execution of a trial. Yes. And will. Yes. But did you make any recommendation regarding that this must proceed by way of intestacy? Yes. You did? Yes. All right. And I did that based on what I believe is the plain language of the statute. All right. You'll note in many sections of the probate act, there are specific sections that deal with specific issues. Guardian of the state, guardian of the person. Guardian of the minor. Guardian of the minor. So the language in that section specifically requires that the trust or will proceed via those who would take under the laws of intestacy. Yes. But the guardian of a disabled person has no such language. There is no such language that tracks what's in the minor statute. Doesn't that indicate the legislature's intent not to require, as the court found, that the will or trust or any provision follow? No, it does not. Because in this statute, in A-5, in three different occasions, it's mentioned the requirement of ascertaining the wishes of the ward. You must remember that A-5 deals with all guardianship adult cases. And there are many cases, perhaps the great majority of cases, where the people who are under guardianship have been competent during their adult life and now, because of Alzheimer's or because of a traumatic injury, no longer are competent. And so there's a distinction made between those who have expressed wishes, either in writing and verbally during their lifetime, and those who have never expressed a wish. The distinction that I drew is that ascertainable, ascertaining the wishes of the ward. That's the specific phrase which is used three times in that section. And that's the distinction that's drawn. Most of these adults have, during their life, expressed wishes as to their estate plan, but one who, as a minor, had no ability to express same and has no ability today to express same, could never express it and therefore is not able to deviate from the intended plan. Would that type of language have been incorporated if the legislature wanted to draw this distinction that you're making? It did incorporate those. Well, only to the extent that you're saying, what's the language you're relying on? I'm relying, if you look at A5, there's language in any manner approved by the court as being in keeping with the ward's wishes so far as it can be ascertained. And just under that, ascertaining and carrying out the ward's wishes. And just under that, the ward's wishes, let's make it be ascertained. All right. So that is how you're now saying that since this ward never had any wishes that were, I'm not sure, I'm following. The ward has never had the ability to express any wishes and therefore there are no wishes to be ascertained and therefore he does not have the ability to deviate from the intestate statute. The intestate statute is in place by the legislature to take care of those circumstances where there's no will perhaps. And you don't think you're adding language? I do not. I believe that there's a purpose. If you will note in Section 8PA, which counsel has relied on, those responsibilities of the estate guardian are all premised on a best interest test. That's not carried forth. How do we know that there are no wishes since there was never any hearing of any kind by anyone who testified regarding the ward's wishes? I think we know for several reasons. Number one, there was a guardian in light of Michael Hubbard who interviewed him and indicated he didn't have capacity. What kind of capacity? Testamentary capacity. And does that word or those words appear anywhere in this statute? Testamentary capacity? Yes. I don't believe that they appear in 8-5. I know they appear in the probate statute. Yes, but not in this statute. But I think what you're asking me is how do we know that he hasn't been able to express his wishes? Yes. That interview, my personal interview with Donald Howell, the physician's personal interview with Donald Howell. Donald Howell has been in court. The judges have had the opportunity to see him. And no one has ever maintained in any way, shape, or form any pleadings that he had any ability to express. What was the information or suggestion in the record regarding his communication via an ad and some kind of notepad or something? Was there anything about that in the record? There is a mention of that in one of the pleadings filed that indicates that he attempts to communicate by a board. That's never been demonstrated to the guardian ad litem. It's never been demonstrated to the court. It's never been demonstrated to anyone that I know of in terms of this case. But that was in the pleading. So would you say that let's take the hypothetical of a person who develops Alzheimer's and they've never executed any documents regarding wills, trusts, anything, as far as the disposition of their estate. Are you suggesting that they would be treated differently than Donald? Yes. And you don't have a concern of a different treatment? I don't think it's a different treatment as such. Why isn't it? The inquiry is the same. Are there ascertainable wishes expressed by the ward during his lifetime? We know the answer in Donald's case is no. Well, I'm not so sure that we know that answer because you just told us there's never been an evidentiary hearing with regard to that. That's correct. He's appeared in court, he's been interviewed by people, but there's never been evidence presented to the court to establish whether or not Donald can express wishes. And we heard, it was very quick, but we just heard in the appellant's presentation, he doesn't concede that point. And so my question is, well, why shouldn't we have at least an evidentiary hearing? I mean, if you have in the pleadings that you just conceded, it's in the pleadings that Donald can communicate in some way by some type of a board, well, what's the extent of that? Do we know? Has it ever been established by way of evidence how much he can express his wishes or not? It has not been. And, frankly, I don't believe with his board, because of his limitations, that he would be able to express those wishes even with a board. I'm very familiar with those boards. I know how they work. There was no pleading filed in conjunction with this which evidenced any information on what his wishes were because he's unable to express his wishes. And, therefore, they are not as sustainable, and, therefore, you cannot deviate from the intestate statute. And I think the language Isn't that an appropriate subject for an evidentiary hearing, for the court to make a finding that he can't express his wishes? I think the court made that finding based on the reports it had before it and based on its observation of the war. Well, all right. So let me just take it to the next step. What about this provision? Your position is that, even though it doesn't say this, that since that section that you just referred to seeks to ascertain Donald's wishes, the ward's wishes, your contention is that if you can't ascertain the ward's wishes, then, therefore, the estate plan must proceed by way of not in derogation to the intestacy laws. Yes. Although it doesn't say that anywhere. It doesn't say that, does it? It doesn't say anywhere in that provision if you can't ascertain his wishes, then it must be by way of intestate. No, but I think what it says, if you can't ascertain his wishes, you can't do the estate plan. And, therefore, it drops to intestate. So it's a default is what you're saying. Yes. Okay. Well, what about the provision that says that the guardian shall not be required to include as a beneficiary any person who he has reason to believe would be excluded by the ward? I think, again, you must remember that A5 has to do with all wards, all adult guardians, guardianship cases. And in that instance, that may very well be applicable to the example that Justice just talked about, which was an adult who has Alzheimer's who had expressed previously wishes about an estate plan and who the beneficiaries would be. And in consideration of that, they would have the ability to deviate from the intestate statute, and that would be one of the considerations that a court would look at and that a guardian would propose. Well, no, but my hypothetical was where they hadn't actually indicated anything to anyone, ever. That was my hypothetical. This is the adult Alzheimer's patient who hasn't made any provision for the disposition of his estate or her estate and has never indicated to anyone what they want to do with it. But that was my hypothetical. Here, let me ask you this. This provision of 6 that says creating for the benefit of the ward or others, irrevocable trust, okay? And then, so that is the provision under which the co-guardians sought to create an estate plan. I think they sought to create it, frankly, under 18A. I mean, there's general powers to do so. Well, the actions or applications of funds may include but shall not be limited to the following. And 6 is this creating for the benefit of the ward or others. Correct? Yes. Now, in that actual section where it says what the guardians shall include in the petition and the application, it says that the proposed action or application of funds may include gifts of the ward's personal property or real estate, but transfers of real estate shall be subject to Section 20. And then it says gifts may be for the benefit of prospective legacies, devisees, and heirs or parents of the ward, or may include to individuals or charities in which the ward is believed to have an interest. And then it says the guardian shall also indicate that any planned disposition is consistent with the intentions of the ward, insofar as they can be ascertained. And if the ward's intentions cannot be ascertained, isn't that what we have here? Yes. All right. The ward will be presumed to favor reduction in the incidence in various forms of taxation. And the partial distribution of his or her estate is provided in this subsection. Okay. So that, what would you say refers back to? I would say that refers back to the actions that would need to be taken to have advantageous tax circumstance. In this instance, there's no advantage tax-wise unless there's a gift made to basically get assets out of the estate. There's no spouse, so there's no deduction from that kind of estate planning. And I believe that that refers specifically to what needs to be done to effectuate the tax savings which is permitted when you can't ascertain wishes. Well, but this reference to the partial distribution of his or her estate is provided in this subsection. Where does that take us back to? I think it takes us back to looking at the listing of things in one through eight that might be utilized to effectuate a tax advantage through estate planning. So you think this is limited to taxes only? Yes. I think it specifically says it has to do with the one presumption will be the presumption to favor reduction in the incidence of forms of taxation. And then you need to effectuate that by going to the permitted listed events in the state. Yes, you don't think that that's a separate consideration. If the ward's intentions cannot be ascertained, they will presume to be in favor of the reduction of taxation. And there will be a presumption of the partial distribution of his or her estate as provided in the subsection. No, because I don't believe that's what it says. All right, well then what does the next sentence mean? Does that have any meaning? The guardian shall not be required to include as a beneficiary? Yes. What does that have? Does that serve anything here at all? I think it has absolute meaning for somebody who has expressed ascertainable wishes and that can be taken into consideration when doing that estate planning document. So you don't see that you're treating the person who doesn't have ascertainable wishes, which apparently there was never any evidentiary hearing on. They will always be treated differently than those who have ascertained wishes. Absolutely, they will be, because that's what the statute calls for. That's why it's mentioned three times in the initial paragraph. So then why does the statute allow the court or the petition of the guardian to exercise any and all powers over the estate and business affairs of the ward that the ward could exercise if present and not under disability? Doesn't that suggest a broad intent that every individual, every adult disabled individual, should be able to have the same kind of disposition of their property as any other disabled person or a minor. So the minor is treated differently. Aren't you treating this one type of individual differently than every other disabled person? Yes. Anyone whose wishes cannot be ascertained is treated differently pursuant to the specific direction of the statute. But couldn't the legislator have said this, which you're suggesting, that we're going to treat these people who've never had any ascertainable wishes differently? Well, the answer is yes, they could have said it. As you know, the legislature doesn't always clearly define what it wants to do. However, in this instance, it's gone to the trouble of including that contingency on three separate occasions in the one paragraph that deals with the estate plan. All right, so how do you deal with the situation where you have a relative that, say, has injured the ward? And what do you do in that situation? Well, I think, for instance, there is a Slater statute, which would take somebody out of having the ability to inherit if that were the case. But I think what you've pointed out is one of the weaknesses of the intestate statute is that it doesn't necessarily distinguish between people and their relationships. And oftentimes under the intestate statute, someone who does not have a close relationship or has not been fully involved in the life of a decedent will benefit. But that's what the legislature has given us in its wisdom as to how to divide up an estate when there's no direction to start with. Can't the opposite argument be made, and that is that that's a fault of the intestate statute. But in the situation where we have the guardian coming to court and saying, I want to put a plan in place, the guardian can guard against that. And so my question is, this section that says, shall not be required to include as a beneficiary or fiduciary any person who has reasonably would be excluded by the ward. Now, the example that they use is a person that has harmed the ward. Well, the guardian could go before the court and say, here's my estate plan. Here's my proposed estate plan. And I propose to exclude this person because this person has harmed the ward. And there could be testimony as to whether or not the person has harmed the ward. And the judge could make a decision as to whether it was objectively reasonable to believe that the ward would want to exclude that person. So translating that to this case, wouldn't it be appropriate to have testimony concerning the fact that the father in this case has had no relationship with the child, has never paid any child support, and as I understand, has been imprisoned for most of Donald's life. The children, the eight or nine other children that are being proposed as potential beneficiaries have had no contact with Donald. Correct me if I'm wrong in any of those circumstances. But couldn't there be an evidentiary hearing to flesh out those stats and for the court to determine whether it was objectively reasonable to determine that the ward would not want to give strangers his money? The answer is yes, there could be an evidentiary hearing. However, I don't believe holding such a hearing would be appropriate. I think that the statute says if you can't ascertain wishes, then you're bound to follow the intestate statute. And I would also comment that I'm not certain that what you've picked up in the brief is necessarily the full story of what the relationship is. Well, that's what evidentiary hearings are for. But I say, unfortunately, in this case, because of the statute, I believe that because there are no ascertainable wishes, you would not have that and you'd be bound by the intestate statute. What you've proposed is perhaps something that should be looked at in terms of the intestate statute and whether or not that should be altered or changed, whether or not just because there is a slayer statute, whether or not there ought to be exceptions to the intestate statute if certain actions have occurred. But in this case, we're bound by this statute with this plain language directing us what to do and making a difference when one cannot. Well, am I wrong, though, that actually in the children born out of wedlock statute, aren't there some provisions that allow for that, for a determination as to what the relationships were and whether there was contact and things like that? Am I wrong about that? No, there are certain provisions in the Eligible Parent Act. You've cited the correct name of the judge. I just refer to it as the Eligible Parent Act. But that's determining the eligible parent. Absolutely, that does have some factors in it. Most importantly, that statute says that that determination is made at the death of Donald Howell, not beforehand, not when he's 23, and there's questions surrounding what kind of access his family has had to him. But it's supposed to be determined at the time of his death, and that's very specifically the language that's in that statute. And once again, we're sidestepping that statute. By permitting this to go forward, if that's what ultimately occurs, you're sidestepping the intestate statute and you're sidestepping the eligible parent statute. Well, this section, though, specifically allows for the creation of a trust for the benefit of others. Replicable or irreplicable, and that may extend beyond his or her disability or life. So there's a provision for this, but in the section... You know what, if I may, I would just say it absolutely does say that, and I would absolutely say that's applicable to somebody whose wishes can be ascertainable. It's just that we can't ascertain wishes here, and therefore... So should it then be the best interest of the minor? The best interest of the minor is specifically to 18A, and I think it's informative that the best interest test, which is at 18A, is not repeated at 18A5. Well, I don't understand. I still think that in the duties of the guardian of the minor, the language couldn't be clearer. It says that the will or trust must make distributions only to the persons who would be entitled to distributions if the minor were to die intestate. And it would have been a simple, simple, simple math for the legislature to have included this language that has been incorporated by the court into a specific section of the Probate Act, which relates to developmental, you know, disabled persons. It could have easily have included this language, and it didn't. And we have to put them all together, and when it chooses to exclude a provision from one section, there's an indication there under general rules of statutory construction that they never intended for the interpretation that has been incorporated here. I believe there's language that's being added that's another violation of statutory construction, that we can't add conditions, exceptions, limitations that the legislature never intended. And I don't see that language anywhere. When it was so easy to include it in the other section, it could have easily have thrown that in. For these persons that you say have never had an ability to indicate their wishes, that they're suddenly lumped in a different provision of the statute, and I don't see that suggestion, intent, or... They're lumped, if you will, in this portion because they are adults under the guardianship statute, and therefore they're under that statute. The legislature has specifically, in this paragraph, talks about ascertaining their wishes. To the extent possible. And that's the distinction that they've made. And if you can't ascertain them, then you can't vary from the intestate statute. But this provision, these provisions also apply to all those wards who have ascertained wishes. Well, what's the harm of an evidentiary hearing, wherein the parties can present to the court the wishes to the extent possible? I mean, both sides would have an opportunity, at least then, to present their positions as to whether or not the ward has any wishes to the extent possible. I think in this case, on the basis of the reports of the guardians of Lytton, physician's report, the appearance of the ward in court, and there being no affirmation from petitioner that he had any ability to express his wishes, I think the court thought there was no need for hearing because there was no case made for having the ability to ascertain what his wishes would be. He had no ability to express. He never has had that ability to express. And, therefore, there is nothing to ascertain. All right. Let me ask you this. Didn't the court at least consider the extent of the disability and the natural object of Donald's bounty? Did he consider those factors? Didn't he say something like that? I believe he did. All right. What is your interpretation of the natural object of one's bounty? I think it's, first and foremost, it's relatives. Relatives who have a part in your life or those that don't? I think the natural object is going to include anyone. Okay. Doesn't that also suggest we need a hearing? Well, you need a hearing if you believe that there are wishes that can be ascertained. If there are no wishes that can be ascertained, there's no need for a hearing. I think that's what the judge's ruling was. He can't ascertain his wishes. There are no wishes that can be expressed. Therefore, we have no choice but to follow the intestate statute. And do you think we're limited to the extent they can be ascertained? Do you think that it's somehow defined for us to the extent they can be ascertained? Has the court created to the extent they can be ascertained by making a decision that this means under the laws of the intestate? I'm not sure I understand your question. Well, it seems to me he's equated the wishes to the extent they can be ascertained is that, in this case, there are no wishes at all. Right. Yes, I think that's what the court concluded. And because there were no wishes, there was no ability to deviate from the intestate statute. I mean, one must remember what we're up here about, what the issue before this court is, is who's supposed to take upon the death of the ward. That's the issue. That's the disagreement. It's between mom and dad. It involves the siblings. That's what prompted us to get all the way up here, because there's a dispute as to who might get this money if Donald Howell passes away. That's the sole issue that there's a disagreement on. And I think that it's very clear what the statute says. I think the language is very clear. I think the distinction, and using that phrase three times in the paragraph during the estate planning, gives us the right to... I understand your argument. What I don't understand is how you go from the ward's wishes to the extent they can be ascertained to then incorporate the laws of intestacy. I don't know that that's really here anywhere. Except if the ward's wishes cannot be ascertained. Then there is no right to do that estate planning, to do the deviation, because the fallback position, you must then go by the intestate statute with the legislature. But think of all the things you've added to the language of the statute. It's not really down there anywhere. I would disagree by saying I haven't added one thing, and all I've done is cite exactly what the language is. And I think that that's why the ruling of the court was correct. Well, Mr. Martin, you've been working awfully hard this morning, so maybe you want to take a couple minutes and talk about fees on appeal. I would be happy to do that. I would say that my position is that the ruling of the trial court was correct, that there should be no fees paid for this appeal. We can certainly cite, which I believe there was actually agreement in terms of what the standards were, was there an abuse of discretion in the court's ruling. For the record, I want to make very clear that there was a petition presented before the court, the trial court, where fees related to the appeal were requested, not only by the Northern Trust Council, but also by counsel for LaTanya Terps. And the court's ruling indicated that they would not be paid. The call-off date was 9-16, I think, in both instances. The Northern Trust petition went through 9-30, and the LaTanya Terps petition went through November 30th, I believe. So it is not correct to say that there was not a question of appellate fees put before the trial court. It was put before the trial court, and the court ruled, I think, frankly, a very straightforward amendment was appropriate, basically indicating to counsel that this was not something that money should come out of Donald Howell's estate to pay for, because the sole disagreement is distribution. That's a fight between mom and dad. It's part of a continuing back and forth between them, which involves many issues. It has nothing to do with Donald Howell. Why should Donald Howell pay for people fighting to decide who gets his money at the time of his death? Why, under any analysis, is that in his best interest? Why, under any analysis, is that something that is a benefit to Donald Howell? It's not. And for those reasons, the court, I think, correctly ruled that... Well, in the sense that he's supposed to be treated like everybody else, have the ability to have things done as any other person would have, as the statute specifically permits. He's being treated differently, in my opinion. I think the question, though, is, in order to have his estate pay the fees, why is it in his best interest? It is not in his best interest. What is the gain for Donald Howell? There is no gain for Donald Howell. Why should he then be permitted to fight and continue to deal with things that are going to occur upon his death at his expense? Is it more appropriately to be paid for by those who are litigating the question, by those who are impacted by the question? Why is it that Donald Howell has to pay for those things? What about the fees for the litigation in the trial court, though? How was that handled? The fees for the drafting work that was done in the trial court were approved in full. And they were approved... The drafting of... The documents that were put forth, the estate planning documents. Okay. And the fee requests of both the counsels for the co-guardians were paid in full and were honored. And in place is the document which reflects the intestate statute. And so I think the court rightfully granted fees for that work. I also think the court rightfully denied fees for appealing the question of were the distributive provisions... But what about the litigation over the objection in the trial court? Was that... Were there fees incurred with regard to that? I mean, there was a hearing in the trial court over this issue. Yes, those fees were all... Not just the drafting, but over the... They were all paid. Right. The only thing that is not to pay... Based on your argument, why should they have to pay? I mean, isn't the same logic carried through to the litigation in the trial court over this issue? I think for two reasons. One, that in good faith the petition was brought. And I think the court respected that. And number two, there was a benefit to Donald Powell ultimately, because the trust docket that was put in place was essentially, following the intestate statute, was essentially a benefit. It's in the nature of administrative change, if you will, to title everything in the name of the trust. And that was put in place, and so that was achieved. And I think the court rightfully paid fees to achieve that. Maybe I didn't answer it clear enough. But the litigation over the objection... The litigation over the objection is the same issue that's before us. Right? So there was a hearing held, there were pleadings filed, and that was paid for. Yes. And arguably, your argument that you're making with regard to this appeal applies equally to that litigation. It's a fight between the mother and the father as to the distribution of funds. So if that was paid, then what's the difference? I mean, especially if there's no case law that controls this issue, an appeal is not brought in bad faith. So if the litigation in the trial court is paid, why wouldn't the appeal be paid? I'm not saying the appeal was brought in bad faith. I'm saying the appeal now involves an issue that has really no benefit to Donald Powell. What's the difference between what was paid for in the trial court? With regard to the litigation over the objection, that was paid for, the fees were paid for. It's the same issue that's before us. So all I'm saying is your argument, if it's strong, it's equally as strong with regard to those fees. I think the way I would distinguish the judge is to say there was something accomplished that benefited Donald Powell. I think the court respected the fact that the petition was brought in good faith. I think there was a benefit from that petition and that the trust was put in place. And I think that's why the court granted those fees. That's a much different circumstance. That was dealt with and then disposed of. Yeah, that's a much different circumstance. We're now carrying up to the appellate court as to fight as to who's going to get the provision, who's going to get the distribution of content. Anything else? Only to reiterate, Judge, that I believe that the orders of the trial court were well-founded. I believe that he followed the plain language of the statute as opposed to the estate planning issue. I believe that his ruling on fees for the appellate work was also correct. I think he followed the Bettoys standard. And I believe that there is no interest, there is no benefit, there is no gain. Even the KEJ standard, there is no gain for Donald Powell. And, therefore, the fees ruling was correct and should be approved. Thank you very much. Thank you. Mr. Schroeder? I represent the respondent. I really don't think I have much to add to what David has said. My client believes that a hearing into his eligibility as a parent should take place, as the statute has intended, in the event that he survives the ward. Probably it's unlikely that will occur, given that the ward appears to be a physically healthy young man who might live another 50 years, and his father is much older. The reason for conducting that hearing after the death of the ward is a reason that events change relationships over time. As a matter of fact, Mr. Powell, my client, did have a close relationship with the ward prior to the time that the big money came in. And he has exercised great effort to try to maintain a relationship subsequent to the filing of the probate case. He's even now been frustrated in his attempts to obtain visitation. But I think there's a reason in the statute, in the eligible parent act, the eligible parent statute. Children born out of wedlock? Yes. I think the statute clearly anticipates a hearing upon the death of the ward. And I think that the petitioner wants to have such a hearing now to determine essentially whether it's in the best interest of the ward that his father be disinherited. The statute provides for disinheritance of an ineligible parent, but it provides for it at the time of the death of the ward. To do it now is premature, probably unnecessary. But it also precludes the possibility that there would be another person caring for the ward during his life. I think that one of the reasons for making that determination upon the death of the ward is that in all of human history, there has been a lot of evidence that matriarchs, patriarchs, settlers have been treated with respect and concern, what looks like a passage for love, because of the likelihood or possibility, the expectancy of a reward later. I think there's lots of references in the Bible to that sort of thing. And there isn't any reason, there isn't any good reason, to conduct that hearing prior to the death of the ward. This case is all about who gets the money if there's any left upon the death of the ward. When you cut through all the verbiage, it's all about the money and who gets it. Mom wants the money, and Mom's friend would take pursuant to her wishes if for some reason Mom wasn't available. That's really what it's about. The statute is not inadequate. You've heard over and over again that this ward has never been able to express any wishes. And as a matter of fact, the petitioner has admitted that's not an issue in the petitioner's pleadings, that well maybe if we had a hearing, we could determine that maybe if we worked at it, if we used the board, if we really worked at trying to ask, maybe we could find something. There isn't any, there's no reference anywhere to any possibility of making a determination as to the ward's interests. It is, I believe, clearly in the best interest of the ward that any argument over the eligibility of its parents takes place after his death. With respect to the fees, the petitioner claimed that there's so much money here, basically that the fees don't mean much. Well, that's incorrect. Donald Howell is a young man who could live for a long time. At the rate of the wasting of this estate, it won't survive. If he lives a normal life expectancy, this estate will be gone before he is. Well, let's hope not. Well, at the rate it's going, Your Honor, it will. I don't know if there's any evidence to that. Because hundreds of thousands of dollars annually are wasting from this estate. And an attorney's feeding frenzy and dealing with the issue of who's going to get whatever's left is an unseemly use of the money for a very helpless ward. Thank you. All right. Thank you, Counsel. Mr. Jordan. I'm going to follow up on a theme from Mr. Howell's counsel and from the GAL. It's all about the money. It's a fight between mom and dad about the money. Not about the money. Northern Trust Company, co-guardian of the estate, we don't get any of the money. It's about our duty under the statute. It's about the rights afforded to Donald under the statute. He is a human being. He has dignity. The statute affords him certain rights, and as co-guardians of the estate, we seek to enforce those rights. And one of those rights is to create a trust. And the co-guardians of the estate, including Northern Trust Company, looks at the facts and in good conscience will present evidence to the court that says why the guardian of the estate would not so provide to these beneficiaries. It is not about Northern Trust giving the money to mom or taking the money away from dad in some fight about the money. It's about doing something consistent with who Donald is as a human being, consistent with who are the people that show him dignity and respect. Those are the people that an able-bodied person would provide for under their will and trust. Those are the people that Donald should be allowed to provide for under his will and trust. I want to focus on this notion that counsel keeps saying, if there's no wishes, it's over. If we can't ascertain the wishes, well, then it's intested. Well, I read the case in Ray CE. I read the case in Ray KEJ. I read Carbon D-Carbon, and I read in Re-Mabry, and every single time they say if you can't determine the wishes, you have a best interest hearing. That's what you do. And your honor was correct. You then look at what is objectively reasonable under the facts and circumstances induced at a hearing, whether or not Donald Sr. is being frustrated, whether access is being denied, whether he had a relationship or doesn't have a relationship. All of those are facts that get put into the mix, and that the trial court uses, if the wishes can't be ascertained, uses an objectively reasonable standard to determine whether this disposition is in Donald's best interest. I thank you. I urge you to reverse the ruling of the trial court, remain for hearing as to fees and on the proposed statement. Thank you. Thank you, counsel. All right. The court wishes to express its thanks to all counsel who have presented today with regard to the oral arguments, which were excellent, and also with regard to the briefing. We are well aware and take note of the fact that this is a case of first impression, and that it's a very important matter, and we will give it due consideration. We'll take it under advisement. Thank you very much. The court is adjourned.